**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| **Dawn M. Ahlstrom,** | **Civil No.: 05-2026 (RHK/JJG)** |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| **Jo Anne B. Barnhart**, | |
| Commissioner of | |
| Social Security, | |
| Defendant. | |

_____

JEANNE J. GRAHAM, United States Magistrate Judge.

Plaintiff Dawn M. Ahlstrom seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her application for social security disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 401 *et seq* and 20 C.F.R. §§ 404.1520(g) and 416.920(g). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The parties have submitted cross motions for summary judgment. For the reasons set forth below, this Court recommends that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

## I.     INTRODUCTION

Dawn Ahlstrom was born on May 3, 1968. (R. at 110). Ms. Ahlstrom filed an application for social security disability insurance benefits and supplemental security income benefits on December 4, 2002. (R. at 112). She alleged she was totally disabled and unable to work due to pinched nerves in the left side of her rib cage, bi-polar disorder, depression and anxiety, with an onset date of March 23, 2001.

(R. at 95 & 110).   The Social Security Administration denied the application initially and on

reconsideration, and Ms. Ahlstrom timely filed a request for a hearing before an Administrative Law Judge

("ALJ").  (R. at 82-97, 480-89).  On August 12, 2004, a hearing was held at which Ms. Ahlstrom

appeared with counsel and testified.  A medical and a vocational expert also testified at the hearing.  (R.

at 37-81).

The ALJ issued an unfavorable decision on January 4, 2005.  (R. at 16-33).  In his decision, the

ALJ employed the five-step sequential analysis required under 20 C.F.R. §§ 404.1574 and 416.920.

During the five-step analytical process, the ALJ considers whether (1) the claimant is gainfully employed,

(2) the claimant has a severe impairment, (3) the claimant's impairment meets or equals the level of severity

described in the Listing of Impairments, (4) the impairment prevents the claimant from performing past

relevant work, and (5) the impairment necessarily prevents the claimant from doing any other work.

Ramirez v. Barnhart, 292 F.3d 576, 580 (8th Cir. 2002).  If the claimant fails at any step, the ALJ need

not continue. The claimant carries the burden of establishing that she is unable to perform her past relevant

work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that she

maintains the residual functional capacity to perform a significant number of jobs within the national

economy. See Singh v. Apfel, 222 F.3d 448, 451 (8th Cir.2000).

In step one of the analysis, the ALJ found no evidence that Ms. Ahlstrom has engaged in substantial

gainful activity since she filed her application. (R. at 20).  Next, the ALJ found Ms. Ahlstrom to be severely

impaired by epilepsy; stenosis of the esophagus; left chest wall pain and neuropathy following esophageal

surgery, which was performed in March 2001; carpal tunnel syndrom on the right; abdominal pain, with

a diagnosis of irritable bowel syndrome; obesity; musculoskeletal contusion of the left shoulder; and

2

headaches.  (R. at 20-21).  The ALJ also determined the Plaintiff met the diagnostic criteria for an affective disorder and a somatoform disorder, and that these mental impairments were severe.  (R. at 22-24). In step three, the ALJ then determined that Ms. Ahlstrom does not have a physical or mental impairment or combination of impairments that meets or equals the relevant criteria of any listed impairment in the Listing of Impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Id.).

In step four of the sequential analysis, the ALJ concluded that Ms. Ahlstrom retains the Residual Functional Capacity ("RFC") to "lift a maximum of ten pounds occasionally and five pounds frequently, with minimal stooping, crouching, crawling, climbing and twisting, no work around dangerous heights, scaffolds, and ladders, minimal exposure to the sun, no power gripping, twisting or pounding with the right hand, and no over the shoulder work of vigorous pushing, pulling or extended reaching on the left." (R. at 26).  In addition, the ALJ concluded that Ms. Ahlstrom "is limited to low stress work, with minimal industrial standards for production and pace, minimal changes in the work processes and easy access to bathroom facilities." (Id.).  The ALJ concluded that Plaintiff's impairments did not preclude her from performing her past relevant work as an electronic assembler and optical goods worker/assembler.  (R. at 31).  Finally, the ALJ, further considered the alternative outcome of Ms. Ahlstrom being unable to return to her past relevant work, and determined that Ms. Ahlstrom can perform a significant number of jobs in the national economy when considering her RFC and her age, education and past work experience.  (Id.).  The ALJ, therefore, determined that Ms. Ahlstrom was not under a disability as defined in the Social Security Act at any time on or before the date of her decision.  (R. at 33).

Plaintiff submitted a request for review of the ALJ's decision to the Appeals Council.  (R. at 13-14).  The Appeals Council denied the request for review on September 7, 2005.  (R. at 8).  The decision

of the ALJ therefore became the final decision of the Commissioner.  (Id.).

## II.    DISCUSSION

Ms. Ahlstrom raises numerous objections to the Commissioner's decision, including that the ALJ (1) wrongly discounted treating medical opinion, (2) improperly discredited her subjective complaints, (3) applied an RFC that was per se disabling, (3) failed to properly individualize the impact of her mental illness, (5) erred in evaluating the effects of her obesity, (6) omitted social functioning from her hypotheticals, and (7) improperly relied on VE testimony that conflicted with the Dictionary of Occupational Titles.  Respondent contends the ALJ made no reversible errors in reaching her determination that the Plaintiff is not disabled under the Social Security Act.

### A.    Standard of Review

When reviewing the Commissioner's decision, the Court neither reweighs the evidence, nor reviews the factual record de novo.  Flynn v. Chater, 107 F.3d 617, 620 (8th Cir. 1997).  The scope of review is narrow; the Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole.  Collins v. Barnhart, 335 F.3d 726, 729 (8th Cir. 2003).  In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might find adequate to support the ALJ's conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  As long as there is substantial evidence in the record supporting the Commissioner's conclusion, the Court cannot reverse merely because it would have decided the case differently.  Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).

### B.    The ALJ's Consideration of the Plaintiff's Treating Physician's Opinion

Ms. Ahlstrom first challenges the Commissioner's decision on the grounds that the ALJ assigned the incorrect weight to the March 2004 opinion of her treating physician, Dr. Praus, that she could work for only four hours each day.  Specifically, Plaintiff objects to the ALJ's finding fault in Dr. Praus's failure to find Plaintiff's limitations permanent.  Plaintiff also objects to the ALJ's discrediting Dr. Praus's opinion because she found it to be based upon Plaintiff's subjective assertions of disability rather than the overall evidence in the record.  The Defendant contends the ALJ properly considered the opinions of Dr. Praus, and that her decision to give it little weight is substantially supported by the evidence in the record as a whole.

### 1.    Legal Standard for Deference to Treating Physicians

A treating physician's opinion is typically entitled to substantial weight.  <u>Dixon v. Barnhart</u>, 353 F.3d 602, 606 (8th Cir. 2003); <u>see</u> <u>also</u> 20 C.F.R. § 416.927(d)(2).  A treating physician's opinion is given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.  <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005) (citations omitted).  On the other hand, the opinion of a treating physician is not entitled to substantial weight if it is inconsistent with other substantial evidence in the record.  <u>See</u> <u>Kelley v. Callahan</u>, 133 F.3d 538, 589 (8th Cir. 1998).

### 2.    ALJ's Considerations of Dr. Praus's Opinions

First, there is no dispute that Dr. Praus was a treating physician.  The ALJ specifically refers to Dr. Praus as Plaintiff's treating physician in her decision denying benefits.  (R. at 22).  Dr. Praus completed a "Medical Opinion" form on March 12, 2004, indicating the Plaintiff suffered from "major depression" and

identifying temporary limitations of "poor concentration/attention" and "emotionality." (R. at 416).   Dr. Praus further opined that the Plaintiff "can perform limited work now" of "4 hours per day" with "limited stress."  (Id.).  Dr. Praus indicated Plaintiff's condition would last "for more than 30 days," but stated he was "uncertain" as to how long he expected her condition to last. (Id.).  In response to an inquiry regarding permanent physical or mental limitations,  Dr. Praus made gave no indication that Plaintiff's condition was permanent.  (Id.)

In assessing Plaintiff's residual functional capacity under step four of the sequential analysis, the ALJ indicated that she gave Dr. Praus's opinion regarding Plaintiff's work limitations little weight.  Specifically, the ALJ stated:

> The undersigned has carefully considered the opinion of Douglas J. Praus, M.D., who has indicated in March 2004 the claimant was capable of only limited employment of four hours a day with limited stress as a result of her difficulty concentrating and poor attention span.  He opined that her condition would last for more than thirty days, but was unable to give any indication of how long her condition would last.  Thus, there is no indication that this restriction is permanent or would apply for even twelve consecutive months.  Further, Dr. Praus's opinion appears to be based upon the claimant's subjective assertions of disability rather than the overall evidence of record. Accordingly, the undersigned gives little weight to this opinion. (R. at 27).

Plaintiff's objection that the ALJ committed reversible error by dismissing the opinion of Dr. Praus because he did not find her condition to be permanent is without merit.  The Court finds no evidence that the ALJ imposed a requirement of a permanent impairment.  Instead, the ALJ's explanation of her consideration of Dr. Praus's opinion is consistent with the requirements for finding that a Plaintiff is under a disability.  Specifically, to demonstrate  the existence of a disability, the Plaintiff bears the burden of establishing the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve

months.  42 U.S.C. § 423(d)(1)(A).  Dr. Praus clearly opined the Plaintiff's condition would last for more than 30 days, but did not make any further determination regarding the duration of the condition, other than to indicate that is was not permanent.  Plaintiff bears the burden of establishing the existence of an impairment that meets the durational requirement.  Dr. Praus's opinion does not provide support for the Plaintiff's contention that she is disabled within the meaning of the Social Security Act, and the ALJ properly declined to give the physician's opinion more than little weight.  Thus, the Court finds no error in the ALJ's determination that Dr. Praus's opinion deserved little weight in her determination regarding Plaintiff's disability under the Act.

The Court further finds no obligation on the part of the ALJ to re-contact Dr. Praus for further clarification of his medical opinion, as Plaintiff contends she should have.  The Regulations require the ALJ to "seek additional evidence or clarification from your medical source when the report from your medical source contains conflicts or ambiguity that must be resolved ... ."  20 C.F.R. § 404.1512(e)(1).  There is no such conflict of ambiguity in Dr. Praus's opinion.  Dr. Praus clearly stated that he was "uncertain," beyond thirty days, as to the duration of Plaintiff's condition.  Dr. Praus further indicated that Plaintiff's condition was not permanent.  Dr. Praus' inability to more specifically determine how long Plaintiff's condition would last is not, in the opinion of this Court, an ambiguity requiring re-contact, and the Court finds no error in the ALJ's consideration of this portion of Dr. Praus' opinion.

Plaintiff also objects to the ALJ's conclusion that Dr. Praus' opinion appears to be based on Plaintiff's subjective complaints rather than the overall record.  (R. at 27).  Plaintiff contends such reasoning by the ALJ "is groundless and runs afoul of basic Social Security law."  The Court rejects this inaccurate contention. The ALJ is to give a treating physician's opinion controlling weight if it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. See Goff, 421 F.3d at 790. A treating physician's conclusory opinion, unsupported by clinical or diagnostic evidence, is not entitled to controlling weight. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996).

The ALJ cites Exhibit 26F of the Record in support of her finding that "Dr. Praus's opinion appears to be based upon the claimant's subjective assertions of disability rather than the overall evidence of record. (R. at 27). Exhibit 26F, as it relates to Dr. Praus, contains four separate entries concerning the Plaintiff's mental impairments: the "Medical Opinion" form completed by Dr. Praus in March of 2004, and three treatment notes concerning office visits by the Plaintiff in the early months of 2004. The Medical Form contains no description of diagnostic testing performed by Dr. Praus, and simply states his conclusions regarding the Plaintiff's medical condition based upon his "knowledge of the patient or client." (R. at 416). While the treatment notes dated January 6, 2004, make mention of the continuance of "the neurological workup," Plaintiff's medical records clearly indicate that this workup was being conducted by another of Plaintiff's physician's, Dr. Hoj, and not by Dr. Praus. (R. at 439). In his treatment notes dated February 18, 2004, Dr. Praus details Plaintiff's complaints and current medication intake, before reporting his observations of the Plaintiff's mental status as "somewhat dramatic, constricted, somewhat down, but very poor concentration and attention is noted." (R. at 432). Again, on April 7, 2004, Dr. Praus's treatment notes describe Plaintiff's complaints and concerns and the importance of the pursuit of regular counseling, and states a similar description of her mental status. (R. at 425). The Court finds no other treatment records or diagnostic reports from Dr. Praus in the Record.

In addition, the Plaintiff, testified at the hearing that she "was never in his [Dr. Praus's] office for more than five minutes," and that during her visits with Dr. Praus, "he would just sit down, ask if the medication was doing all right. And I said no. He goes, well, should we try that or try that?" (R. at 60). Plaintiff testified that she "thought this guy was going to help me, that Dr. Praus, and all's he did was prescribe me medication and I walk all in, you know, see you next time." (R. at 61). Plaintiff testified she did not follow Dr. Praus's suggestion that she see another psychiatrist or psychologist because she was afraid the next doctor would do the same thing. (Id.) The Court finds Dr. Praus's failure to identify any particular "clinical and laboratory diagnostic techniques" in the treatment records in combination with Plaintiff's own testimony that she did not receive meaningful treatment from Dr. Praus, sufficiently demonstrates a failure by Dr. Praus to support his medical opinions with medically acceptable clinical and laboratory diagnostic techniques. In addition, the Record contains no other medical opinions supporting the four hour work day limitations set forth by Dr. Praus. In fact, the only other work restriction present in the medical records of Plaintiff's treating physicians is a six month limitation on driving and working at heights directed by Plaintiff's neurologist, Dr. Hoj, following a seizure episode in early 2004. (R. at 415 & 434).

The Court finds Dr. Praus's opinion regarding Plaintiff's work limitations is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in the Record. The ALJ did not err in giving little weight to the conclusions of Dr. Praus regarding Plaintiff's work limitations as they related to her mental condition.

### B.   Plaintiff's Subjective Complaints

Plaintiff next contends the ALJ did not seriously consider her complaints of pain.  Plaintiff argues the ALJ failed to make an express credibility determination explaining her reasons for discrediting Plaintiff's subjective complaints.  In determining a claimant's RFC at step four of the sequential analysis, an ALJ must evaluate the credibility of the testimony regarding claimant's subjective complaints of pain.  Ramirez, 292 F.3d at 580.  In Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), the Eight Circuit approved a standard for credibility evaluations of a claimant's pain and subjective complaints.  The absence of supporting medical evidence is one factor to consider in evaluating credibility.  Id. at 1322.  The ALJ must also consider the claimant's prior work record; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  Id.  "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Id.  Questions of credibility are for the trier of fact, and a reviewing court should defer to the ALJ's credibility determination if the decision expressly discounts a claimant's evidence and gives good reason to do so.  Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

### 1.   Prior Work Record

The ALJ noted that although the alleged disability began in March 2001, Plaintiff's earnings record revealed minimal earnings for many of the years prior to that date, including earnings of only $1,068.00 in 1998, $2,097.59 in 1996, and no earnings whatsoever in 1997.  (R. at 31).  The ALJ found the Plaintiff work history weighed against a finding that Plaintiff was significantly motivated to return to work.  The ALJ properly considered and utilized this factor to discount Plaintiff's credibility.

###### 2.      Daily Activities

As to Ms. Ahlstrom's daily activities, the ALJ found her daily activities to be inconsistent with her allegations of pain, and her overall daily routine inconsistent with a finding of disability.  The Record contains substantial evidence to support the ALJ's determination.  For example, Ms. Ahlstrom testified that she has trouble playing with her son, (R. at 45), but is able to do laundry and vacuum. (R. at 50).  She testified that she shops for herself and for her parents.  (R. at 66).  Plaintiff completed an Activity of Daily Living Questionnaire in December 2002, in which she stated she is able to drive, cook, clean and watch her son on a daily basis, (R. at 151), as well as bath and groom herself.  (Id.)  Plaintiff also indicated she worked as a babysitter for three months during the summer of 2003, (R. at 200), and  treatment notes from July 2002 indicated the Plaintiff took her children to the rodeo and that she injured herself trying to get into an amusement park ride. (R. at 266-67).  In February 2003, Plaintiff indicated to a consulting psychologist that on a typical day she gets up and gets dressed, drops her son off at school, spends the day at home, picks her son up from school, helps him with his homework, plays with her son, eats dinner and puts him to bed.  (R. at 311).  Evidence that daily activities are inconsistent with the alleged level of pain may be considered in judging the credibility of subjective complaints.  See Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1995).  The ALJ properly considered inconsistencies in the record relating to Plaintiff's activities of daily living as part of her assessment of Plaintiff's credibility of subjective complaints.[1]

---

[1]The Court notes the ALJ indicated Ms. Ahlstrom's daily activities are inconsistent with her allegations of pain, but are fully consistent with the residual functioning capacity described elsewhere in the ALJ's decision.  (R. at 31).

### 3.      Duration, Frequency and Intensity of Pain

The ALJ examined the duration, frequency and intensity of Ms. Ahlstrom's pain.   The ALJ considered Plaintiff's allegations of extreme pain on the left side of her rib cage, her back pain, her difficulties with concentration, crying spells, difficulty with sleeping, and increased anxiety, (R. at 25), as well as her complaints of chronic fatigue due to a lack of sleep.  (Id.).   The ALJ also noted her consideration of the activities questionnaires of Plaintiff's boyfriend and mother and found them to support the claimants allegations regarding her pain.  (Id.).  The ALJ found the Plaintiff credible that she had been "subjected to a degree of pain and functional limitation" (R. at 26), and reduced Plaintiff RFC accordingly. However, the ALJ also noted her inability to credit Plaintiff's claims of an inability to engage in all work activity at any level because of significant inconsistencies in the record as a whole.  (Id.).

This finding is well supported by the record.  First, Plaintiff told consulting psychologist, Dr. Wiger on February 4, 2003, that she would presently be able to work at a stamping job that she held in 2001 before she was laid off.  (R. at 310).  One of Plaintiff's treating physicians, Dr. Rodman, noted in his October 23, 2003, treatment records that Plaintiff "states in general she is feeling quite good.  Her musculoskeletal pain has been in fairly good control. Her anxiety has been stable since she had an episode earlier this summer."  (R. at 370).  In November 2001, eight months after Plaintiff contends she became disabled, she was seen by Dr. Saunders for complaints of severe pain on her thoracolumbar spine "after shoveling snow last night and today."  (R. at 271).  During this visit, Plaintiff reported she had not used any analgesics since May, 2001, and had no further pain related to her thoracotomy. (Id.).   In July of 2002, Dr. Saunders saw Plaintiff for complaints of joint pain, and found no abnormalities of her hips, knees, wrists or hands, and recommended Plaintiff take Tylenol.  (R. at 268).  In July 2002, a physician treating Plaintiff

at an Urgent Care noted Plaintiff "is very dramatic in her presentation of pain." (R. at 267).  In December

of 2002, Dr. Saunders indicated Plaintiff "is very fixated on her chronic pain." (R. at 259).  In April of

2003, Dr. Praus described Plaintiff as "somewhat dramatic" (R. at 425).

The Court recognizes that the record contains evidence of Ms. Ahlstrom's medical treatment for

many of the impairments alleged here.  However, while there may be no doubt the Plaintiff is experiencing

pain, the issue is the severity of the pain.  See Hutton v. Apfel, 175 F.3d 651, 654 (8th Cir. 1999).  There

is substantial evidence, both cited by the ALJ and in the record itself, negating the alleged severity of Ms.

Ahlstrom's pain.  Accordingly, the ALJ did not error in discounting the duration, frequency and intensity

of Ms. Ahlstrom's pain.  The Court further points out that the ALJ did in fact find Ms. Ahlstrom to possess

a limited RFC and accommodated such limitations with limitations on Ms. Ahlstrom's functional capacity

to work.  (R. at 28).  However, the ALJ did not find credible Ms. Ahlstrom's claim that she was incapable

of all work activity.  The ALJ correctly considered the duration, frequency and intensity of Ms. Ahlstrom's

pain.

### 4.    Dosage, Effectiveness and Side Effects of Medication

The Court next turns to the dosage, effectiveness and side effects of Plaintiff's medication.

Plaintiff reported, and the medical records confirm, she has been prescribed numerous medications at

varying time during the relevant time period.  The ALJ considered the medications taken by Plaintiff and

found the course of medical treatment and use of medication in this case to be inconsistent with disabling

levels of pain. (R. at 30).   The ALJ noted Plaintiff's reports of some pain relief with her TENS unit.  (Id.).

In addition, the record documents improvement in many of Plaintiff's symptoms, including her pain, irritable

bowel syndrom, seizures, and anxiety, through the use of medications.  (R. at 46-47, 279, 244, 246, 423).

Plaintiff both testified and reported on her "Pain Questionnaire" that she did not experience side effects from her medication. (R. at 47 & 161).

The ALJ also stated that the record reveals evidence that Plaintiff obtained narcotic pain medication under false premises, and when confronted with this fact by her examining physician, would not acknowledge her behavior. (R. at 30) This conclusion by the ALJ is well-supported by the record. On May 16, 2003, Plaintiff was seen by Dr. Long for an evaluation of pain medication refill. (R. at 375). Dr. Long reported the Plaintiff attempted to obtain Percocet from him one day after Dr. Rodman denied to refill the same prescription, and one day after she had filled a separate Percocet prescription from another outside doctor. (Id.). Dr. Long reported that when he confronted the Plaintiff with these events, she made excuses and denied wrongdoing. (R. at 375-76). Dr. Long made a notation that he would request that the Plaintiff be removed as a patient from the clinic because "clearly she obtained narcotics under very false premises and, even worse, when caught could not tell me the truth." (R. at 376). On July 29, 2003, Ms. Ahlstrom went to Dr. Rodman for a follow up on a recent hospital visit. (R. at 373). Dr. Rodman noted Ms. Ahlstrom received 12 Percocet from the hospital for her pain "and is here today because she wants more Percocet." (Id.). Dr. Rodman declined to prescribe more Percocet, and indicated "[t]here is some question here as to whether she is exhibiting drug seeking behavior." (Id.). The ALJ was certainly entitled to consider the evidence of Plaintiff's drug seeking behavior and overall medication in assessing the dosage, side effects, and effectiveness of her medication. The evidence in the record clearly undermines her credibility as to this factor and her credibility in general.

### 5.      Other Factors

There is no specific mention in the decision of the ALJ's consideration of precipitating and aggravating factors.  However, an ALJ need not discuss methodically each Polaski factor as long as the factors are acknowledged and examined.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  The court will defer to an ALJ's good judgement even if every Polaski factor is not discussed in depth as long as the ALJ gives good reasons for discrediting the claimant.  See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).

While the ALJ's did not expressly discuss all of the Polaski factors in her decision, she thoroughly reported on her analysis of the record and her reasons for discrediting Ms. Ahlstrom's subjective complaints of pain.  Moreover, the ALJ included in her Polaski analysis her observations that the objective medical evidence and the claimant's course of treatment are not consistent with the severity of Ms. Ahlstrom's allegations.  (R. at 26-31).  The ALJ's decision chronicles Plaintiff's extensive medical history and treatments, and notes the record's confirmation of a history of chronic back and chest wall pain, abdominal pain, left and right extremity pain, neuropathy, headaches and depression. (Id.).  The ALJ also notes, however, that the treatment records repeatedly documented the absence of finds of abnormalities after medical diagnostics and testing, as well as reports by the Plaintiff of improvements in her condition following some treatments. (Id.).

In sum, the Court finds there is substantial evidence in the record to support the ALJ's finding of inconsistences in the supporting medical evidence and the severity of Ms. Ahlstrom's allegations.  The Court also finds there is more than adequate detail in the decision of the ALJ regarding her reasons for the level of discrediting of Plaintiff's subjective complaints.

### C.  Applicable RFC and Consideration of Mental Impairment Impact

Plaintiff next claims her RFC, as determined by the ALJ, renders her unable to respond appropriately to normal work setting standards, when considered realistically, and is, therefore, *per se* debilitating.  Specifically, Plaintiff contends the ALJ's finding that her RFC functionally limited her to "low stress work," "minimal industrial standards for production and pace, and "minimal changes in work processes" effectively indicates Plaintiff is unable to respond appropriately to customary work pressures in an ordinary work setting.  Plaintiff argues that the ALJ failed to evaluate Plaintiff's limitations against a realistic work setting.  The Court finds Plaintiff's objections are unfounded.

RFC is a medical question.  See Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000).  RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence including medical records, physician's opinions, and claimant's description of her limitations.  See Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995); 20 C.F.R. §§ 404.1545(a) & 416.945(a).  It is the claimant's burden to prove her RFC.  Id.  However,  "[w]here the claimant has a nonexertional impairment (such as pain), the ALJ may not rely exclusively on the grids [medical-vocational guidlines] to determine disability but must also consider the testimony of a VE."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998); 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 200.00(e).  The ALJ obtained the testimony of an impartial vocational expert ("VE") at the hearing, and asked the VE if a hypothetical individual could perform Plaintiff's past work if the person were

> an individual with a GED, plus education, 33 years of age at onset; work experience as outlined by yourself, who's on a number of medications with no reported side effects, who's impaired with chronic pain and neuropathy on the left side, who suffers from an affective mood disorder with anxiety and a somatoform disorder, who suffers from headaches and gastritis, esophagel spasms, right wrist carpel tunnel, and left shoulder pain and obesity, who's limited to lifting and carrying 10

pounds occasionally, five pounds frequently, who can do work that requires no heights, ladders, or scaffolding, doing work where there is minimal exposure to the sun, where there would be no power gripping, twisting, or pounding on the right, no over shoulder or vigorous push, pull, or extended reach on the left. Minimal stoop, crouching, crawling or climbing, twisting. Minimally being defined as one-sixth of the time. With easy access to bathroom facilities on the same floor, certainly in the same building. In a low stress environment where minimal industrial standards of production and pace are applicable. And doing work where there would be minimal changes in work processes or task.

(R. at 75-76).[2]   The VE responded that the hypothetical individual could perform the past sedentary unskilled electronic assembly and optical assembly work of the Plaintiff, as well as other assembly work at a sedentary level. (R. at 77).   The VE opined there were 7,000 to 10,000 such sedentary assembly jobs in the state. (Id.).   The VE also opined the job of security monitor could also be performed, and that there were approximately 1,000 such positions in the state.   Significantly, Plaintiff's counsel declined to question the VE regarding the hypotheticals or the jobs upon which he opined.   In fact, counsel did not ask the VE any questions whatsoever.   (Id.).   The Court finds no evidence in the record to support Plaintiff's assertion that the ALJ "effectively asked the VE to throw out a 'reality check' on jobs, and effectively 'dumbed down' the true job market."   Nor does the Court find any authority in the Rules Plaintiff cites that support her contention that an RFC that includes "low stress" is *per se* debilitating.

Plaintiff's objection that the ALJ failed to properly individualize the impact of her mental illness is also unsupported by the record in this case.   In assessing the Plaintiff's RFC, the ALJ considered Plaintiff's mental health treatment by Dr. Hoj and Dr. Praus as well as the assessments of consulting psychologists.

---

[2] The ALJ first asked the VE this same hypothetical, except that the lifting and carrying limitations were described as limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently. The VE opined under this first hypothetical, that an individual could perform assembly work such as the work Plaintiff previously performed. The ALJ ultimately found the Plaintiff's RFC to be consistent with the second hypothetical, with the 10/5 pound limitations, as described above.

(R. at 26-27).  The ALJ's hypothetical questions generously accommodated Plaintiff's mental  limitations including her affective mood disorder with anxiety and a somatoform disorder, her need for a low stress environment where minimal industrial standards of production and pace are applicable, and her need to perform work where there would be minimal changes in work processes or task.  (R. at 75-76).  The Court finds no evidence in the decision of the ALJ to support Plaintiff's contention that the ALJ focused on the amount of stress in a particular job rather than on the claimant's ability to handle stress.  To the contrary, the ALJ's decision contains extensive discussion of Plaintiff's medical history and treatment during the relevant time period, including her treatment for her mental illness, and are readily recognized as part of the hypothetical questions the ALJ posed to the VE.

### D.        Consideration of Plaintiff's Obesity

Plaintiff contends the ALJ failed to evaluate her obesity, and explain its impact on the ALJ's conclusions concerning her impairments.  However, although the ALJ noted Plaintiff's medical treatment for obesity in her decision, and found Plaintiff's obesity to be a severe impairment, Plaintiff never alleged any disability or limitation in function as a result of her obesity in her application for benefits or during her testimony at the hearing.  Indeed, Plaintiff's counsel undertook a detailed review of Plaintiff's "problems" in his opening statement to the ALJ at the hearing, and did not make any reference to obesity in his summary.  (R.at 40).  Accordingly, Plaintiff has waived her objections regarding a claim concerning her obesity on appeal. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (citing Pena v. Chater,

76 F.3d 906, 909 (8th Cir.1996) (noting that the ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.").[3]

### E.    Omission of Social Functioning From Hypothetical Questions

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Newton v. Chater, 92 F.3d 688, 694-95 (8th Cir. 1996). Where a hypothetical question posed to a vocational expert does not accurately reflect the claimant's impairments, the expert's testimony cannot constitute substantial evidence on the record as a whole. See Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir.1992). Testimony from a vocational expert based on a proper hypothetical constitutes substantial evidence. See Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). Plaintiff contends the ALJ's hypothetical questions to the VE erroneously omitted Plaintiff's RFC limitations relating to social functioning. Plaintiff argues that because of the defective hypothetical questions, the VE's testimony that Plaintiff could perform her past relevant work and other work cannot constitute substantial evidence to support the Commissioner's findings.

Plaintiff's objection is not well-founded. In her decision, the ALJ undertook an analysis of four broad areas of Plaintiff's functioning as part of the assessment of Plaintiff's mental impairments and whether any of them met the criteria of the Listings. This analysis is part of step three of the sequential analysis and

---

[3]The Court notes for the record, that while the ALJ could have provided more specificity regarding her consideration of Plaintiff's impairment of obesity, the ALJ limited Plaintiff to a reduced range of sedentary work (R. at 32) and specifically included obesity as one of the characteristics in the hypothetical posed to the VE as part of her assessment of the Plaintiff's residual functioning capacity. (R. at 75). Thus, contrary to the Plaintiff's contention, the ALJ's decision does include some indication of the ALJ's consideration of the impact of Plaintiff's obesity on her ability to work.

takes place prior to any consideration by the ALJ of Plaintiff's RFC in step four.  As part of the step three analysis, the ALJ determined Ms. Ahlstrom had "no more than mild limitations in social functioning," and that "any limitations in the area of social functioning and daily activities are the result of the claimant's physical impairments rather than any medically determinable mental impairments."  (R. at 23).  Plaintiff has misidentified the ALJ's severity findings at step three as RFC limitations associated with step four.

Moreover, when considering the functional areas relating to a mental impairment in step three, the Regulations direct that when "we rate the degree of [a claimant's] limitation in the first three functional areas as 'none' or 'mild' ... we will generally conclude that your impairment(s) is not severe ... ."  20 C.F.R. § 404.1520a (d)(1).  The Regulations further indicate that a non-severe impairment is one that "does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521.  Therefore, the Commissioner is correct in her contention that the Plaintiff's "no more than mild" limitations in social functioning had no impact on her RFC.  Therefore, the ALJ's omission of Plaintiff's social functioning limitations from the hypothetical questions posed to the VE was reasonable and proper.  Plaintiff's reliance on <u>Newton v. Chater</u>, 92 F.3d 688 (8th Cir. 1996), is misplaced. The ALJ in that case erroneous omitted from the hypothetical questions Plaintiff's moderate to marked limitations in concentration, persistence and pace.  Here, the ALJ included in her hypothetical questions those functioning deficiencies found to be moderate (concentration, persistence and pace) and omitted only those found to be mild  The Court finds the testimony of the VE was based upon a proper hypothetical and, therefore, constitutes substantial evidence upon which the ALJ properly relied.

### F.      Dictionary of Occupational Titles

Finally, Plaintiff contends the ALJ violated SSR 00-04p by relying on testimony from the VE that conflicted with the Dictionary of Occupational Titles ("DOT").  Specifically, Plaintiff contends the VE's testimony that a person with restrictions of (1) no over shoulder reaching, (2) no extended reaching and (3) no twisting of the right hand could perform the Plaintiff's past relevant work of electronic and optical assembly was in conflict with the DOT's listing of these jobs, which Plaintiff claims require "frequent reaching and handling - without restriction."  Plaintiff further contends that because the ALJ failed to resolve this conflict, the VE's testimony is invalid.

The Eighth Circuit has repeatedly held that DOT definitions for particular occupations "represent [ ] the 'approximate maximum requirements for each position, rather than [the] range.'"  Carlson v. Chater, 74 F.3d 869, 871 (8th Cir.1996) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir.1995); see also Wheeler v. Apfel, 224 F.3d 891, 897 (8th cir. 2002) ("The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.").  In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.  Id.   Although the DOT generally controls, "[t]he DOT classifications may be rebutted . . . with VE testimony which shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'"  Montgomery v. Chater, 69 F.3d 273, 276 (8th Cir.1995) (quoting Johnson, 60 F.3d at 1435).

Here, the vocational expert specifically identified some of the Plaintiff's prior assembly jobs as the jobs an individual could perform given the hypothetical limitations.  (R. at 77).  Plaintiff's own description of her work activities support the VE's conclusion.  Plaintiff indicated that as a cable assembler for Park

Mfg, her job required her to reach, grasp, handle small objects, and write. (R. at 139-39). Plaintiff also indicated the heaviest weight she lifted on the job was 10 pounds, with the most frequently lifted weight being less than 10 lbs. (Id.). Plaintiff stated her job duties were to "mostly sit, move parts down the assembly line." (Id.). Significantly, Plaintiff's counsel declined to question the VE about any potential conflicts his opinions might have with the DOT. AS noted above, Plaintiff's counsel declined to ask the VE any questions at all. Under these circumstances, the Court declines to seriously consider Plaintiff's complaints that her right to cross-examine the VE on the basis for his opinions is in danger of being compromised if this case is not remanded.

The law of this Circuit is that the Commissioner cannot rely on expert testimony that conflicts with the job classifications in the DOT unless there is evidence in the record to rebut those classifications. See Porch v. Chater, 115 F.3d 567, 572 (8th Cir.1997). From the Plaintiff's own description of her job activities, and the VE's specific consideration of them within the context of the limitations set forth in the ALJ's hypothetical questions, the Court concludes there was no apparent conflict between the vocational expert's testimony that the Plaintiff could perform some of prior work as an assembler and the more general standards set forth in the DOT. Even if there was an apparent conflict, the VE adequately explained any discrepancies by specifically referring to the Plaintiff's prior work as the past work she could perform.

Moreover, even if the vocational expert did not sufficiently address any discrepancies regarding the DOT definitions and the Plaintiff's prior work, and even if the ALJ failed to reconcile any apparent conflict, findings the Court does not make, the ALJ plainly recognized the availability of approximately 1000 jobs for unskilled sedentary work in the national economy as a security monitor, and there can be no dispute that the Plaintiff could perform this work.

### G.      ALJ's Decision Substantially Supported by the Record

For all of these reasons, the Court concludes that the evidence in the medical records, the Plaintiff's

own testimony, the hypothetical inquiries, and the entire administrative record substantially supports the

ALJ's thorough and well-reasoned determination in this case.

### III.     CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

    (1)     Plaintiff's Motion for Summary Judgment (Doc. No. 11) be **DENIED.**

    (2)     Defendant Commissioner's Motion for Summary Judgment (Doc. No. 15) be

        **GRANTED,** and this case be **DISMISSED WITH PREJUDICE.**

Dated: July 7, 2006.               s/Jeanne J. Graham

                      _____
                      JEANNE J. GRAHAM
                      United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by July 27, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.